J-S30044-18

2018 PA Super 200

IN RE: ADOPTION OF D.M.C. AND A.L.C.  :  IN THE SUPERIOR COURT OF
                                      :        PENNSYLVANIA
                                      :
                                      :
                                      :
                                      :
APPEAL OF: M.M.C., NATURAL MOTHER     :  No. 224 WDA 2018

Appeal from the Order Entered January 3, 2018
in the Court of Common Pleas of Cambria County
Orphans' Court at No(s): 2017-791 & 792-IVT

BEFORE:    BENDER, P.J.E, STABILE, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:                    FILED JULY 09, 2018

M.M.C. (Mother) appeals from the January 3, 2018 order granting the

petitions of Cambria County Children and Youth Services (CYS) to terminate

involuntarily Mother's parental rights to her minor children, D.M.C., born

December 2004, and A.L.C., born April 2013 (Children, collectively).[1]  After

review, we vacate the order as to Mother without prejudice and remand for

proceedings consistent with this opinion.

The relevant procedural history and facts may be summarized as

follows.  In April 2016, CYS opened services[2] for Children due to allegations

of abuse and neglect.  N.T., 12/7/2017, at 14-16; see also CYS Trial Exhibit

_____

[1] The orphans' court also involuntarily terminated the parental rights of
Children's respective fathers.  Neither father has filed his own appeal or
participated in this appeal.

[2] Mother and Children's fathers had been previously involved with CYS
concerning not only Children here, but other children as well.  Order,
1/3/2018, at ¶ 3; N.T., 12/7/2017, at 8, 12, 14; see also CYS Exhibit 5, at
3-4.

*Retired Senior Judge assigned to the Superior Court.

7.  Shortly thereafter, Mother was evicted from her apartment for failure to pay rent and utilities.  After shelter and dependency hearings on June 15, 2016, the juvenile court adjudicated Children dependent and ordered Children removed from Mother's home based on findings of inadequate shelter, a bedbug infestation, financial instability, transiency, and allegations of sexual abuse of D.M.C. by Mother.[3]  CYS Trial Exhibit 7.  The goal was reunification.

Throughout the proceedings before the juvenile court, Mother was ordered, inter alia, to receive a psychological evaluation, successfully complete parenting skills classes, fully cooperate with Independent Family Services Home Management (IFS) until successfully discharged, eradicate bedbugs from her home and belongings, maintain a clean, safe, and adequately furnished home for at least six months, pay rent, utilities, and other bills on time, ensure all utilities are in proper working order at all times, complete sexual offender treatment, and attend outpatient mental health counseling.  Id.

By August 2017, Children had been in foster care for 15 of the prior 22 months.  Id.  Despite extensive assistance from numerous agencies and

---

[3] Mother pled guilty on October 26, 2017 to indecent exposure, 18 Pa.C.S. § 3127(a), relating to Mother forcing D.M.C. to take pictures of her naked in sexual positions. N.T., 12/7/2017, at 16, 23, 25-26; see also CYS Exhibit 8. This resulted in an indicated report of child abuse with ChildLine pursuant to 23 Pa.C.S. Chapter 63 (Child Protective Services).  The remaining charges were nol prossed.  Id.  She was ordered to complete sexual offender treatment, but failed to do so.  N.T., 12/7/2017, at 20-21, 109.

providers, Mother never made more than minimal progress toward alleviating the circumstances which necessitated original placement and had achieved only minimal compliance with the permanency plan. Order, 1/3/2018, at 3-5; CYS Trial Exhibits 5, 7. Although initially cooperative, during the last months of assistance, Mother became hostile and uncooperative. N.T., 12/7/2017, at 20, 87. While she briefly worked at McDonald's for about one month, at the August 2017 permanency review hearing she remained unemployed and homeless. Id. at 21. Further, she had been discharged from IFS and mental health counseling for noncompliance, and had not completed her required sexual offender treatment. Id. at 20-21, 109. Based on the foregoing, the juvenile court changed Children's placement goal to adoption.

On September 7, 2017, CYS filed petitions to terminate involuntarily Mother's parental rights to Children pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), and (8) of the Adoption Act.[4] A hearing was held on December 7, 2017. Five witnesses testified, including Mother, a CYS caseworker, the psychologist who conducted a psychological evaluation of Mother, and two providers of family and/or in-home services. On January 3, 2018, the

---

[4] CYS also petitioned the orphans' court to terminate involuntarily parental rights of Children's fathers. See n.1, supra. Further, while the orphans' court January 3, 2018 order indicates that CYS filed petitions to terminate involuntarily parental rights on September 17, 2017 (Order, 1/3/2018, at 1), the certified record shows the petitions were filed on September 7, 2017.

orphans' court terminated Mother's parental rights to Children.  This appeal followed.[5]

Before we reach the issues presented by Mother on appeal, we address sua sponte whether Attorney Gregory J. Neugebauer's representation of Children satisfies the requirement of 23 Pa.C.S. § 2313(a).  See In re K.J.H., 180 A.3d 411 (Pa. Super. 2018) (holding that this Court must raise sua sponte child's right to counsel).  Children have a statutory right to counsel in contested involuntary termination proceedings:

> The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both parents.  The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child.  No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

Our Supreme Court held in In re Adoption of L.B.M., 161 A.3d 172, 180 (Pa. 2017), that the orphans' court must appoint counsel who is directed by the child to represent the legal interests of a child involved in a contested involuntary termination proceeding pursuant to this subsection.  As our Supreme Court held, a child's legal interests are synonymous with the

---

[5] Both Mother and the orphans' court complied with Pa.R.A.P. 1925.  The orphans' court adopted its January 3, 2018 order and opinion as its Rule 1925(a) opinion.

child's preferred outcome, while a child's best interests must be determined by the court. L.B.M., 161 A.3d at 174.

This Court has interpreted L.B.M. as permitting a child's guardian ad litem to serve also as his or her legal counsel, so long as there is no conflict between a child's best and legal interests. In re D.L.B., 166 A.3d 322, 329 (Pa. Super. 2017).

Our review of the certified record does not reveal what role Children's attorney served. The orphans' court appointed Devon A. Malloy, Esquire as attorney for Children in the termination proceedings.[6] See Order Setting Hearing, 10/9/2017, at 1. The order refers to Attorney Malloy as "court-appointed counsel." Attorney Malloy later withdrew and the orphans' court appointed Attorney Neugebauer. See Motion for Leave of Court to Withdraw as Court-Appointed Counsel and Petition to Appoint New Counsel and Order, 11/13/2017, at 1. Once again, this order refers only to representing Children,[7] but does not indicate whether this representation is for Children's legal or best interests, or both.

---

[6] The dependency orders entered into the record at the termination hearing show Paul Eckenrode, Esquire and Timothy Sloan, Esquire served as Children's guardian ad litem in the dependency matters before the juvenile court. See CYS Trial Exhibit 7.

[7] The order states "Gregory Neugebauer, Esquire is appointed to represent the ~~alleged incapacitated person~~ children in the above captioned matter moving forward." See Motion for Leave of Court to Withdraw as Court-Appointed Counsel and Petition to Appoint New Counsel and Order, 11/13/2017, at 1 (verbatim). The strike-through and handwritten word

Footnote Continued Next Page

Compounding this uncertainty is Attorney Neugebauer's inconsistent use of his title in filings with the orphans' court and this Court. In petitioning the orphans' court for approval of fees, he referred to himself as "Counsel for the Children," "Attorney for the Children," and "Court-Appointed Attorney." See Petition for the Approval of Fees, 1/8/2018, at cover page, 1-2 (unnumbered). However, in filing his brief before this Court, he titled the brief and signed as guardian ad litem for Children. See Brief of Guardian Ad Litem for Appellees, D.M.C. and A.L.C., 4/26/2018, at cover page and 7.

Further, Mother's attorney, Richard M. Corcoran, Esquire, in filing her notice of appeal with the orphans' court, indicated on the certificate of service Attorney Neugebauer's role as guardian ad litem for Children. See Notice of Appeal, 2/5/2018, at 7 (unnumbered). But when Mother filed her brief before this Court, the certificate of service indicated Attorney Neugebauer as "Attorney for Children." See Brief of Appellant, 4/5/2018, at 8.

Moreover, nowhere in the transcript of the December 7, 2017 termination hearing does the orphans' court note for the record whether its appointment of Attorney Neugebauer is as counsel representing Children's legal interests or as guardian ad litem representing their best interests. Our

_____

Footnote Continued from Previous Page
"children" suggest a boilerplate form was used without due consideration of Attorney Neugebauer's role.

review of the hearing transcript shows the following regarding Attorney Neugebauer's role. He cross-examined two of the five witnesses, but did not introduce any witnesses or evidence. During the hearing, he referred to himself as "counselor for the children" or prefaced his statements with "on behalf of the children." N.T. 12/7/2017, at 81, 112, 118.

At the end of the hearing, the orphans' court permitted Attorney Neugebauer to make a statement:

> On behalf of the children, respectfully, first, I'd like to tell the [c]ourt I did have the opportunity to speak with [D.M.C.]. I spoke with him on the phone last night, actually.[8] Very energetic young man even on the phone. For 12 years old, he communicated pretty well with me.
>
> He did indicate that he loves his mom. I asked him if he understood what today was about. He indicated that he did. And I believe he did. I think his ultimate opinion, based on my limited conversation with him, is that he's ready for permanency. And, unfortunately, [Mother] and neither of the fathers can offer him that type of permanency.
>
> They've been in placement a long time, Your Honor. I know [Mother] says housing is well on its way. I think we're a little past that point already. I did a rough calculation. She doesn't have any employment and no prospect. Hopefully she gets Social Security. Where it stands now, if her fiancé, who has no financial obligation to these kids and on whom she's going to

---

[8] Ascertaining a child's position about important and sensitive matters such as his relationship with his mother is no easy task. Although it is not clear from Attorney Neugebauer's statement, it appears from the record that his only interaction with D.M.C. was this one limited conversation over the telephone. It further appears from the record that Attorney Neugebauer had no interaction whatsoever with A.L.C. Not only must counsel consult directly with his or her clients, but we strongly encourage counsel for children to do all he or she can to cultivate a relationship with his or her clients and not rely on such brief and impersonal interactions.

rely, if he makes $11 an hour at McDonald's, which I think is being generous, a rough estimate, that's about $23,000 a year before taxes or anything else. I don't think $23,000 a year in total income with somebody not obligated to the kids is going to get the kids what they need. I just don't see that happening.

I do believe there's a bond between [Children] and [Mother]. However, I don't think severing that bond would be negative to their interests. I think it's actually at this point in their best interests, so that they get the permanency.

The other thing I'd say is that I hope that CYS would encourage whoever the permanent adoptive parents are, maybe they'd promote PACA [post-adoption contact agreement]. I think in this instance, I think that's something that would be good for the boys, particularly, [D.M.C.]. I think it would be good for the boys. They know [Mother]. They love [Mother]. While [Mother] may not be the best for them long-term to care for their daily needs, I think that relationship should be maintained even if it's a minimum. Thank you.

Id. at 118-19 (emphasis added).

Attorney Neugebauer indicated in his brief to this Court that D.M.C. wants to be adopted but wants continued contact with Mother. Brief of Guardian Ad Litem for Appellees, D.M.C. and A.L.C., 4/26/2018, at 7. While the record shows Attorney Neugebauer briefly conferred with D.M.C., then just shy of 13 years old, as to his preferred outcome for permanency, we cannot discern from the record whether D.M.C. fully understood during the limited telephone call with Attorney Neugebauer that his adoption would mean, absent a post-adoption contact agreement (PACA), that his relationship with Mother would be legally and permanently severed. Even though Attorney Neugebauer advocated for PACA and a continued

relationship with Mother, it is by no means guaranteed. It is unclear whether D.M.C. would continue to prefer adoption if his adoptive family did not support PACA or informally arranged post-adoption visitation.

Caseworker Barb Brzana testified, in response to questioning from Attorney Neugebauer, that she was in favor of Children's continued contact with Mother post-adoption and had begun to discuss it with Mother. N.T., 12/7/2017, at 44. Brzana testified that D.M.C. hoped his potential adoptive family would allow contact with Mother, but A.L.C. did not express any interest, possibly due to his age (then about four-and-one-half years). Id. at 44-45. At the time of the hearing, Children had not yet been placed with a potential adoptive resource, but they had been visiting with a foster family who could provide permanency. Id. at 30. Children were moving the following day to live with this family. Id. Therefore, at that time, there was no way of knowing whether the potential adoptive family would support PACA or even an informally arranged post-adoption contract, and if not, whether D.M.C.'s preferred outcome of permanency would change. See In re Adoption of G.L.L., 124 A.3d 344, 348 (Pa. Super. 2015) (noting that PACA is a purely voluntary agreement requiring the consent of the adoptive parents). Thus, based upon the facts of this particular case, there is a potential conflict between the position advanced by Attorney Neugebauer and the position expressed by D.M.C.

Regarding A.L.C., we are unable to locate any place in the record where Attorney Neugebauer set forth A.L.C.'s preferred outcome.[9] We likewise do not find any evidence that Attorney Neugebauer met with or interviewed A.L.C., nor did Attorney Neugebauer indicate that he was unable to ascertain A.L.C.'s preferred outcome due to his age, development, or other reason. Rather, Attorney Neugebauer advocated for the orphans' court to grant CYS's petitions because he believes termination is in Children's best interests. N.T., 12/7/2018, at 118-19.

In In re Adoption of T.M.L.M., __ A.3d. __, 2018 WL 1771194 at *4 (Pa. Super. Apr. 13, 2018), we held that remand was required when a nearly six-year-old child's preference was unclear and the child's counsel had neglected to interview the child to determine whether the child's best and legal interests aligned. As we observed:

---

[9] A.L.C.'s position at the time of the hearing is not readily discernible from the record. Caseworker Brzana expressed her opinion at the hearing that A.L.C. may have been too young to express his preferred outcome. N.T., 12/7/2017, at 31, 44. Indications of what A.L.C.'s position might be are as follows: (1) A.L.C. enjoys visits with Mother, id. at 31, 85-86; (2) A.L.C. enjoys spending time with his foster family, id. at 31; (3) A.L.C. used to throw temper tantrums when visits with Mother ended, but that behavior stopped as visits continued, id. at 93-94; see also CYS Trial Exhibit 15; (4) A.L.C. "knows he can't go home" with Mother, N.T., 12/7/2017, at 31; see also CYS Trial Exhibit 11; (5) during supervised visits, A.L.C. runs to give Mother a hug, CYS Trial Exhibit 15; (6) A.L.C. "appeared happy to see" Mother at supervised visits, N.T., 12/7/2017, at 92; (7) A.L.C. sometimes plays by himself during Mother's supervised visits, but also enjoys playing with Mother, id. at 32.

> We recognize that attorneys may encounter unique challenges when representing children that are different from the challenges they may encounter when representing adults, particularly when the representation concerns such sensitive subject matter. Nevertheless, counsel representing children must represent their clients with zeal and professionalism. Children have no say in appointment of counsel and deserve to have the benefit of effective representation, particularly when a matter as important as their future relationship with a biological parent is at stake. Not only do children not have a say in the appointment of counsel, due to their minority, most children are not in a position to assess whether counsel has represented their interests effectively.
>
> * * *
>
> Like adult clients, effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position.

T.M.L.M., 2018 WL 1771194 at *4 (internal citation and quotation marks omitted).

At the time of the hearing, D.M.C. was a few weeks shy of his thirteenth birthday and A.L.C. was about four and one-half years old. While Attorney Neugebauer did have a limited conversation over the telephone with D.M.C., is it unclear what D.M.C.'s preferred outcome is absent PACA. Further, and significantly, we do not find any indication in the record that Attorney Neugebauer ever attempted to ascertain A.L.C.'s position. While A.L.C. may not have been old enough to actively participate in Attorney Neugebauer's representation of him,[10] and it is possible A.L.C. was too

---

[10] Rather than this Court making assumptions about a child's capabilities, it would be far better for the trial court in the first instance to consider this

Footnote Continued Next Page

- 11 -

young to clearly express his position, A.L.C. likely had feelings about permanency. Attorney Neugebauer should have attempted to ascertain those feelings to determine whether A.L.C. had a preferred outcome and was capable of directing Attorney Neugebauer's representation at least to some extent.[11] See id.

For the foregoing reasons, we conclude that we are unable to determine from the record whether Children received the benefit of their statutorily-required right to client-directed counsel serving their legal interests. Nothing in the record indicates definitively that the orphans' court appointed Attorney Neugebauer as such legal counsel. Moreover, nothing in the record indicates definitively that Attorney Neugebauer advocated for Children's legal interests and followed the direction of Children.

We recognize that Children have been in foster care for two years at this point, and would benefit from achieving permanency. As was the case in T.M.L.M., 2018 WL 1771194 at *4, we likewise here do not wish to prolong the uncertainty of Children's future, but we are constrained to

_____

Footnote Continued from Previous Page

issue prospectively and analyze each child individually. We note that a legal-interest attorney, separate from a best-interest attorney, need not be appointed for a child who is unable to articulate a position to legal counsel because, in that situation, there is no conflict between the child's legal and best interests. See D.L.B., 166 A.3d at 329.

[11] We note that Pa.R.P.C. 1.14 addresses representation of clients with diminished capacity.

- 12 -

vacate the order terminating Mother's parental rights and remand for further proceedings.

On remand, we direct the orphans' court to appoint client-directed legal-interests counsel for the Children forthwith. It is incumbent upon such counsel to attempt to ascertain Children's preferred outcome as to Mother by interviewing Children directly, and to follow Children's direction to the extent possible and advocate in a manner that comports with Children's legal interests. Legal-interests counsel should discern from D.M.C. whether he continues to prefer adoption if his adoptive family does not support continued contact with Mother. If A.L.C. is indeed too young to express clearly his position as to Mother or direct counsel's representation to any extent, counsel shall notify the orphans' court. Such legal-interests counsel may also serve as guardian ad litem only if a conflict-of-interest analysis by the orphans' court reveals commonality between Children's best and legal interests, and this should be noted on the record. See L.B.M., 161 A.3d at 183-93 (a majority of our Supreme Court concluding counsel may serve in both a best- and legal-interests capacity for child so long as there is no conflict between those interests); see also D.L.B., 166 A.3d at 329 (interpreting L.B.M. and finding "such separate representation would be required only if the child's best interests and legal interests were somehow in conflict").

Once Children's preferred outcomes as to Mother are identified, Children's counsel shall notify the orphans' court whether termination of Mother's parental rights is consistent with Children's legal interests. If Children's preferred outcomes as to Mother are consistent with the result of the prior termination proceeding, the orphans' court shall reenter its January 3, 2018 order as to Mother. If Children's preferred outcomes as to Mother are in conflict with the prior termination proceeding, the orphans' court shall conduct a new termination hearing as to Mother to provide Children's counsel an opportunity to advocate on behalf of Children's legal interests. See T.M.L.M., 2018 WL 1771194 at *4 (finding that the orphans' court shall conduct a new hearing if it serves the "substantive purpose" of providing child with an opportunity to advance his legal interests through his new counsel). We observe that Children may have differing preferred outcomes as to Mother, in which case Children's legal counsel shall inform the orphans' court, and the court shall appoint separate legal-interests counsel for each child and conduct further proceedings consistent with this opinion.

Order vacated as to Mother without prejudice to permit the orphans' court to reenter the original order if a new termination hearing is not required. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/9/2018