J-S47015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A. M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.M., FATHER | : | No. 431 WDA 2018 |

Appeal from the Order Entered February 7, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000142-2017

BEFORE:   OLSON, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:                           **FILED NOVEMBER 07, 2018**

R.M. ("Father") appeals from the order entered February 7, 2018, granting the petition filed by the Allegheny County Office of Children, Youth, and Families ("CYF") seeking to terminate involuntarily his parental rights to his minor child, A.M., a female born in January 2007 ("Child"), with R.S. ("Mother"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(2) and (b).[1] Upon review of the record and recent, applicable case law, we are constrained to vacate the order without prejudice and remand this case for further proceedings consistent with this memorandum.

On September 9, 2017, CYF filed a petition to terminate involuntarily the parental rights of Mother and Father to Child.  On September 11, 2017,

_____

[1] In a separate order entered February 7, 2018, the trial court involuntarily terminated the parental rights of Mother to Child pursuant to section 2511(a)(2), (5), (8), and (b) of the Adoption Act.  Mother is not a party to this appeal, nor has she filed a separate appeal.

_____

*   Retired Senior Judge assigned to the Superior Court.

the trial court appointed Attorney Sara Johnson, from KidsVoice, as the guardian *ad litem* ("GAL") for Child; however, on September 26, 2017, the trial court granted KidsVoice's motion to vacate the appointment, and the trial court entered an order for conflict counsel to enter an appearance. On October 2, 2017, Attorney Lynne P. Sherry, from the Allegheny County Office of Conflict Counsel, Dependency Division, entered her appearance for Child as conflict counsel.

On February 7, 2018, the trial court held an evidentiary hearing on the petition. At the hearing, Attorney Alexandra Gruskos represented CYF; Attorney Marsha C. Hughes Grayson represented Father; and Attorney Jeffrey K. Eisenberg represented Mother. Attorney Sherry represented Child as conflict counsel, and Attorney Raymond Sanchas, an attorney from the Allegheny County Office of Conflict Counsel, represented Child's siblings, J.S., a male born in November 2014, and C.S. and N.S., twin females born in June 2012, as conflict counsel. N.T., 2/7/18, at 4. No one was present who was specifically identified as Child's GAL at the termination hearing. CYF presented the testimony of Amanda McCloy, the CYF caseworker assigned to the case; Kirk Thoma, a visit coach from Project STAR at the Children's Institute; and, via telephone, Neil Rosenblum, Ph.D., the court-appointed psychologist who performed psychological evaluations of Child and Mother. *Id.* at 5-6, 69, 103, 111. Mother testified on her own behalf, and presented the testimony of her mother, L.S., Child's maternal grandmother ("Maternal Grandmother"). *Id.*

at 150, 164.  Father testified on his own behalf.  *Id.* at 167.  Attorney Sherry, on behalf of Child, presented the testimony of Josh Rowe, a permanency specialist from Project STAR and the foster care caseworker for Child.  *Id.* at 172.

The trial court set forth the factual background and procedural history of this appeal as follows:

> While this case has a prior history with CYF, [Child] was brought into care on February 21, 2016, at the age of 9.  At that time, [Child], along with her younger, minor siblings from different fathers, had been living with Mother.  Father did not live in the home and had had minimal involvement with [Child].
>
> The triggering event occurred when the children were found alone in the bathroom, with one of the younger ones unresponsive.  All of them were taken to the hospital, and there were concerns about the deplorable condition of their housing with Mother.  Father appeared at the subsequent shelter hearing, but [Child] was not able to be placed with him, in large part because [Father] had never had any significant relationship with [Child].
>
> CYF developed goals for Mother and Father.  Mother's goals related to her mental health and intellectual disabilities and with both parents' ability to address the children's developmental and emotional needs.  Although Mother made some efforts, she was not able to succeed sufficiently to resume parenting.
>
> Father's goals were to address mental health issues and any possible intellectual disabilities, to engage in visiting and parenting training and to acquire and maintain adequate housing.  During the life of the case, he moved several times but maintained a residence from June [] 2017 until the hearing the following February.  Father had lived in the home with Mother, but only when [Child] was an infant, and[,] therefore, the two had never developed a relationship, with him having almost no involvement in the family's life.
>
> Father was originally scheduled to see [Child] for supervised visits once a week, but this had to be scaled back for a time to every

- 3 -

other week due to his failure to visit consistently. Project STAR provided coached visits for Father from April to November of 2017, and then Father continued supervised visits thereafter. Coached visits consisted of more intensive work between a visit coach and Father as opposed to the simple monitoring of supervised visits.

Over time, Father was unable to demonstrate consistency in his scheduled visiting with [Child], which resulted in disappointment and emotional harm to her. More specifically, Father only completed 57% of his scheduled visits from the time of [Child's] placement through the time of the hearing. Father's visit coach testified credibly that, when Father came for visits, he was able to interact positively with his daughter in the sense that the two had fun, but he was unable to be affectionate and never succeeded in learning to have age-appropriate conversation with her. Father, for example, discussed subjects like his relationships with women, his monetary issues[,] and court-related matters. Additionally, Father upset [Child] during one visit not long before the January 2018 hearing when he suggested to [Child] that his paramour of less than one year would adopt [Child].

While Father is pleasant with [Child] and was able to learn to create an enjoyable experience with her, he has never made her a priority, focusing on his work schedule and on others, as evidenced by the number of missed visits. Father's relationship to [Child] is similar to that of a peer rather than that of a parent. Father has never had to organize [Child's] school or recreational life or provide her with parental guidance and supervision, and during her 23 months in care, he was never able to demonstrate the kind of commitment that this would involve. In fact, over the course of the case, he did not succeed in gaining unsupervised visits.

A licensed psychologist with 40 years of experience evaluated Father and found him to be a likeable man who cares about [Child]. Unfortunately, Father is also a very casual man who did not appear to take anything very seriously and, as noted, had never given his daughter's needs precedence. The psychologist expressed concern over Father's complete lack of any history in functioning as a parent as well as over Father's ability to make visits and show awareness of [Child's] educational and social needs, in which she had shown some delays.

On September 9, 2017, CYF filed the current petition to terminate Mother's and Father's parental rights.

Since her removal, [Child] has remained in the same foster home, where she has received excellent care. She attended physical therapy for balance concerns, which is an issue to monitor in light of Mother's diagnosis of muscular dystrophy. [Child] is a loving child with interests such as art, and she has established a positive relationship with her foster parents and her foster sister. [Child's] foster parents were previously appointed to serve as medical decision-makers for her because neither Father nor Mother was readily available or reachable when their consent was needed. On the other hand, the foster parents have been diligent in coordinating [Child's] medical care.

Testimony by the psychologist confirmed that [Child's] family life in foster care is very positive in all respects. [Child] is in a different home from her siblings, in part because she ended up in a somewhat *de facto* parental role during time with them. She is in therapy to assist her in dealing with her separation from her siblings. The psychologist testified that [Child] will likely experience a reduction in anxiety when given certainty and permanency in her family life. He further opined that [Child] has moved psychologically from her original family to that of her foster home, which is a pre-adoptive placement.

Trial Court Opinion, 4/18/18, at 4 (internal citations omitted).

On February 7, 2018, the trial court entered the orders involuntarily terminating the parental rights of both Father and Mother to Child. On March 5, 2018, Father timely filed a notice of appeal and concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In his brief on appeal, Father raises the following issues:

I. Whether the Trial Court erred and/or committed a fatal error and/or abused its discretion by finding that the Office of Children, Youth and Families met their burden of proof and proved by clear and convincing evidence that the parental rights of [Father] should be terminated pursuant to 23 Pa[.]C.S.A. 2511(a)(2)?

II. Whether the Trial Court erred and/or committed a fatal error and/or abused its discretion by finding that the Office of Children, Youth and Families met their burden of proof and proved by clear and convincing evidence that terminating the parental rights of [Father] would best meet the needs and welfare of [Child] both now and in the future as prescribed by 23 Pa[.]C.S.A. 2511(b)?

Father's Brief at 1.

Before we may consider the merits of the issues raised on appeal, we first consider whether Child was, in fact, represented by legal counsel at the termination hearing. *In re K.J.H.*, 180 A.3d 411 (Pa. Super. 2018) (providing that this Court may, *sua sponte*, raise the failure to appoint statutorily-required legal counsel for a child). Recently, and applicable herein, our Supreme Court issued an opinion to clarify a child's statutory right to the appointment of legal counsel. *See In re T.S.*, ___ A.3d ___, 2018 WL 4001825 (Pa. 2018). That decision further examined the Supreme Court's prior decision in *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017), and explained that children have a clear statutory right to mandatory appointment of counsel to represent their legal interests in contested termination of parental rights proceedings.[2]

Our Supreme Court granted allowance of appeal in *In re T.S.* to determine whether separate attorneys were required to represent a child's best interests apart from his or her legal interests. The Supreme Court

---

[2] "[A] child's legal interests [] are synonymous with the child's preferred outcome," *In re Adoption of L.B.M.*, 161 A.3d at 174; whereas, a child's best interests are to be determined by the trial court. *Id.*

clarified its **L.B.M.** decision and recognized that, "where a child's legal and best interests do not diverge in a termination proceeding, an attorney-[guardian *ad litem*] representing the child's best interests can also fulfill the role of the attorney appointed [] to represent the child's legal interests." **In re T.S**., 2018 WL 4001825 at *6. The **T.S.** Court also noted that the majority view in **L.B.M.** "indicated that, where a child is too young to express a preference, it would be appropriate for the [guardian *ad litem*] to represent the child's best and legal interests simultaneously." **Id.** The **T.S.** Court ultimately concluded that, when a child is too young[3] or non-verbal, the child's wishes cannot be ascertained, and therefore there is no duty to advise the court. **Id.** ("As a matter of sound logic, there can be no conflict between an attorney's duty to advance a subjective preference on the child's part which is incapable of ascertainment, and an attorney's concurrent obligation to advocate for the child's best interests as she understands them to be"). The **T.S.** Court concluded:

_____

[3] In **T.S.**, the Supreme Court and "[t]he parties agree[d] that, due to the children's very young age (two and three years old), they [could not] have formed a subjective, articulable preference to be advanced by counsel during the termination proceedings[.]" **In re T.S.**, 2018 WL 4001825 at *7. Conversely, however, the **T.S.** Court noted that Pennsylvania's Rules of Professional Conduct refer to "children as young as five or six years of age . . . having opinions which are entitled to weight in legal proceedings concerning their custody." **Id.** at *7 n.17, *citing* Pa.R.P.C. 1.14, Explanatory Comment 1. In this case, there is no dispute that, at the time of the termination proceeding, Child was over 11 years old.

> We [] reaffirm certain principles agreed upon by a majority of Justices in **L.B.M.**, namely, that during contested termination-of-parental-rights proceedings, where there is no conflict between a Child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests. . . . [M]oreover, if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests[.]

**Id.** at *10.

Moreover, in **In re Adoption of T.M.L.M.**, 184 A.3d 585 (Pa. Super. 2018), this Court examined the requirements necessary for counsel to provide adequate representation of a child's legal interests as follows:

> At the time of the hearings, [T.M.L.M.] was just shy of six years old. While [T.M.L.M.] may not have been old enough to participate actively in [court appointed counsel's] representation of him, it is not unlikely that [T.M.L.M.] has feelings one way or another about his mother and his permanency. Like adult clients, **effective representation of a child requires**, **at a bare minimum**, **attempting to ascertain the client's position and advocating in a manner designed to effectuate that position**. It may be that [T.M.L.M.'s] preferred outcome in this case is synonymous with his best interests. It may be that [T.M.L.M.] wants no contact with Mother. [T.M.L.M.] may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of Mother's rights may still be appropriate even if [T.M.L.M.] prefers a different outcome.

**In re Adoption of T.M.L.M.**, 184 A.3d 585, 590 (Pa. Super. 2018) (emphasis added) (internal citation omitted); **In re Adoption of M.D.Q.**, 192 A.3d 1201 (Pa. Super. 2018) (vacating and remanding where this Court was unable to ascertain from the record whether the appointed counsel represented the subject children's legal interests and ascertained their preferred outcomes, but appeared to have speculated as to their preferred outcomes, and this

Court could not determine the children's legal interests from the record, either).

We also note that, in **In re Adoption of D.M.C.**, 192 A.3d 1207 (Pa. Super. 2018), this Court vacated the trial court's order, which involuntarily terminated the mother's parental rights to her children because (among other things) "the certified record [did] not reveal what role [the c]hildren's attorney served" and, even though the children's attorney spoke with one of the children and conveyed that child's request for permanency to the court:

> we cannot discern from the record whether D.M.C. fully understood during the limited telephone call with [the attorney] that his adoption would mean, absent a post-adoption contact agreement (PACA), that his relationship with [his m]other would be legally and permanently severed. Even though [the attorney] advocated for PACA and a continued relationship with [the m]other, it is by no means guaranteed. It is unclear whether D.M.C. would continue to prefer adoption if his adoptive family did not support PACA or informally arranged post-adoption visitation.

**Id.** at 1211.

Our review of the certified record reveals the following. At the termination proceeding, Attorney Sherry entered her name on the record, stating that she was representing Child. N.T., 2/7/2018, at 4. During the termination of parental rights proceeding, counsel for CYF called the caseworker involved with Child, Amanda McCloy, as its first witness. Ms. McCloy ultimately testified that she believed that it was in Child's best interest to terminate Father's parental rights. **Id.** at 30-31. Attorney Sherry cross-examined Ms. McCloy, asking questions pertaining to the medical conditions

of Mother and Child, Child's placement in foster care, Father's involvement with Child and his visitation with Child, and Father's progress with his FSP objectives. *Id.* at 52-64. Attorney Sherry also asked the witness questions pertaining to the pre-adoptive foster home. *Id.* at 64-65. Attorney Sherry cross-examined Mr. Thoma, the visit coach, pertaining to the visitations between Child with Mother and Child with Father, and the effect of Father's visitations and missed visitations on Child. *Id.* at 93-95. Moreover, Attorney Sherry cross-examined Dr. Rosenblum regarding his evaluations of Child conducted in October 2016 and October 2017, and about Child's pre-adoptive foster care home. *Id.* at 142-143. She further questioned the psychologist witness as to his opinion regarding whether adoption would be in Child's best interests. *Id.* at 143-145. Finally, Attorney Sherry presented the testimony of Josh Rowe, questioning him about Father's visits with Child. *Id.* at 172-184.

At the end of the proceedings, counsel for CYF argued that there was clear and convincing evidence that Father had not remedied the conditions that led to the Child coming into CYF's care and that termination of Father's rights was in Child's best interest. *Id.* at 190. Attorney Sherry agreed with the recommendation that the termination of Father's parental rights would be in the Child's best interest. *Id.* at 199-201.

During her summation, Attorney Sherry stated:

MS. SHERRY: Your Honor, in this case, I do believe that the County has met [its] burden of proof by clear and convincing evidence that grounds exist for termination. I think that Mr. Eisenberg is

- 10 -

right when he says that it is not just about complaints but progress also. And[,] unfortunately, the parents didn't make their progress necessary. This [c]ourt made findings of minimal[] progress at several review hearing[s], including the most recent ones.

In terms of Sections 5 and 8, as they pertain to [Father], while it is true that [Child] was not in his custody upon removal, if he had been immediately available to parent [Child], then [Child] wouldn't have been adjudicated dependent. In fact, the order of adjudication actually makes a finding that [Father] hadn't been [Child's] caretaker for most of her life and that he needed to establish a relationship with [Child]. And I think that directly goes not to grounds, and the fact that his visits were inconsistent at 57 percent, but also to [Child's] needs and welfare.

[Child] does enjoy a relationship with her father, and she would like to continue this with him and her mother. But she also has made it very clear that she wants to be adopted in this foster home and that she has experienced anxiety and distress, as the testimony has elicited today. Much of that has been over missed visitation. So[,] the father may want to continue the peer relationship that he has with [Child], and hopefully he'll be able to do so. Those missed visits really impeded on [Child's] ability to establish that relationship with her father, and I think consistent with her emotional needs and welfare, Dr. Rosenblum also provided very clear and convincing testimony that adoption is the permanency goal that is most consistent with [Child's] needs and welfare. So I would ask [the trial court] to terminate the rights of [M]other and [Father].

N.T., 2/7/18, at 199-201.

Although the trial court appointed Attorney Johnson to serve as GAL for Child in the termination proceedings, and subsequently vacated that appointment and ordered the entry of appearance by conflict counsel, it is not clear from Attorney Sherry's entry of appearance or from her brief that she was serving in the capacity of both Child's legal counsel and GAL. While Attorney Sherry stated that Child had "made it very clear that she wants to be adopted in this foster home," there is nothing in the record that supports

her statement. Based upon the record before us, there is no indication that Attorney Sherry, as Child's legal counsel, interviewed Child to determine Child's preferred outcome, as required. Attorney Sherry filed a brief on behalf of Child in this Court, but she did not discuss Child's preferred outcome in the brief, either. *In re Adoption of T.M.L.M.*, 184 A.3d at 590 (reminding that counsel's duty to represent a child does not end at the conclusion of the termination hearing).

Further, even if Child told Attorney Sherry that "she wants to be adopted in this foster home," Attorney Sherry also represented to the trial court that "[Child] does enjoy a relationship with her father, **and she would like to continue this with him and her mother**." N.T., 2/7/18, at 199-201 (emphasis added). As is similar to *In re Adoption of D.M.C.*, the record is not clear whether Child was aware that "absent a post-adoption contact agreement (PACA), that [her] relationship with [her father] would be legally and permanently severed." *In re Adoption of D.M.C.*, 192 A.3d at 1211.

As such, it is not clear from the record that counsel ascertained whether there was a conflict between the Child's legal interests and best interests, as is required under this Court's recent case law. Therefore, the record does not substantiate that the Child's statutory right to legal counsel was satisfied by the appointment of Attorney Sherry and her representation of Child.

Hence, we are constrained to vacate the order terminating Father's parental rights, without prejudice. On remand, after reviewing the prior

- 12 -

proceedings and appropriately consulting with Child, Attorney Sherry shall notify the trial court whether the result of the prior proceedings was consistent with Child's legal interests or whether counsel believes a new hearing is necessary to advocate a separate preferred outcome or placement for the Child. *See T.M.L.M.*, 184 A.3d at 591. The trial court shall conduct a new hearing only if it serves the substantive purpose of providing Child with an opportunity to advance her legal interests through new counsel. *Id.* If, however, a new hearing is deemed unwarranted, the trial court may re-enter the original order terminating Father's parental rights.

Order vacated without prejudice. Case remanded for additional proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/7/2018