J-S43045-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

IN RE: A.L.H., A MINOR  : IN THE SUPERIOR COURT OF
         :   PENNSYLVANIA
         :
APPEAL OF: J.H., SR., FATHER :
         :
         :
         :
         :
         :
         : No. 428 WDA 2018

Appeal from the Order January 25, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court
Division
at No(s):  CP-02-AP-0000019-2017

IN RE: H.A.H., A MINOR  : IN THE SUPERIOR COURT OF
         :   PENNSYLVANIA
         :
APPEAL OF: J.H., SR., FATHER :
         :
         :
         :
         :
         :
         : No. 429 WDA 2018

Appeal from the Order January 25, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court
Division at No(s):  CP-02-AP-0000018-2017

IN RE: L.J.H., A MINOR  : IN THE SUPERIOR COURT OF
         :   PENNSYLVANIA
         :
APPEAL OF: J.H., SR., FATHER :
         :
         :
         :
         :
         :
         : No. 430 WDA 2018

Appeal from the Order January 25, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court
Division at No(s):  CP-02-AP-0000017-2017

J-S43045-18

BEFORE: STABILE, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                          FILED DECEMBER 28, 2018

J.H., Sr. (Father) appeals from the orders entered January 25, 2018, which granted the petition of the Allegheny County Office of Children, Youth, and Families (CYF), and terminated his parental rights to his children, A.L.H. (born in April of 2012), H.A.H. (born in August of 2013), and L.J.H. (born in November of 2009) (collectively, Children).[1]  We vacate the orders and remand for proceedings consistent with this memorandum.[2]

We adopt the facts and procedural history set forth by the orphans' court.  See Trial Ct. Op., 4/3/18, at 2-5.  By way of a brief background, we note that the family was first referred to the Allegheny County CYF in September 2015, following allegations of severe neglect.[3]  In October 2015,

_____

[1] The trial court also changed Children's permanency goal to adoption pursuant to the Juvenile Act, 42 Pa.C.S. § 6351.  However, Father does not challenge the court's order changing the permanency goal to adoption. Accordingly, due to his failure to present argument on this issue in his brief, it is deemed waived.  See In re W.H., 25 A.3d 330, 339 n.3 (Pa. Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); see also In re M.Z.T.M.W., 163 A.3d 462, 465-66 (Pa. Super. 2017).

A.K. (Mother) did not contest the termination of her parental rights or the change in the permanency goals as to Children, and has not appealed.

[2] The case regarding a fourth child, J.H., Jr., was continued after he made a disclosure of sexual abuse.  See Trial Ct. Op., 4/3/18, at 1; see also N.T., 1/25/18, at 1-15, 144-45.

[3] The family previously resided in Mercer County, and the Mercer County Office of Children, Youth, and Families had been involved with the family in 2009, 2011, 2012, 2013, and 2014.  See N.T., 1/25/18, at 97-107, 220-21.

- 2 -

an investigation found that Children were living in deplorable conditions. The home was filthy and strewn with feces and dirty diapers. Children were covered in flea bites, and insects were discovered in the home. Other serious concerns involved medical neglect, Children's serious developmental delays, and potential mental health and domestic violence issues with Father and Mother. Following the investigation, CYF made an emergency shelter request for Children.

On October 20, 2015, the trial court adjudicated Children dependent as to Father. Mother, who suffered from anxiety and depression, stipulated to the finding of dependency. Children were removed from the home, placed in foster care, and have not lived with Father since that time.

"Father's goals included obtaining safe and appropriate housing, visitation, participating in [parenting education], and attending mental health and domestic violence counseling, which was also to address anger management." See Trial Ct. Op. at 3. In 2016, Father's visitation was suspended after J.H., Jr., made allegations of sexual abuse against him and paternal grandfather. However, the allegations were ultimately determined to be unfounded.

On February 15, 2017, CYF filed petitions seeking to terminate Father's and Mother's parental rights. In July 2017, the trial court appointed Lynn

Sherry, Esq., to represent the legal interests of H.A.H. and A.L.H. and Margaret Gold, Esq., to represent the legal interests of L.J.H.[4]

On January 25, 2018, the trial court held a hearing on the termination petition. Father was represented by counsel. See N.T. at 1. In support of its petition, CYF presented the testimony of Vickie Morris, a permanency specialist, and Joanna Bucci, a CYF caseworker. See N.T. at 27, 91. Father testified on his own behalf. Attorneys Sherry and Gold were present and cross-examined the witnesses. Following the presentation of evidence, the court granted the petitions pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b), and entered decrees terminating Father's parental rights.

On February 22, 2018, Father contemporaneously filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its 1925(a) opinion on April 3, 2018.

Prior to considering Father's issues in this appeal, however, we address sua sponte whether the representation of Children provided by Attorney Sherry and Attorney Gold satisfies the requirement of 23 Pa.C.S. § 2313(a). See In re K.J.H., 180 A.3d 411, 414 (Pa. Super. 2018) (holding that this Court must raise sua sponte the issue of a child's right to counsel).

Section 2313(a) provides:

_____

[4] A guardian ad litem ("GAL") had been previously appointed to represent Children during dependency proceedings.

- 4 -

> The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

Our Supreme Court has highlighted the distinction between "counsel" representing a child's legal interests and the guardian ad litem representing a child's best interests. See In re Adoption of L.B.M., 161 A.3d 172, 181 (Pa. 2017) (plurality). The Court noted that legal interests are synonymous with the child's preferred outcome, but the child's best interests are determined by the court. Id. at 174 Since L.B.M., this Court has clarified the requirements appointed legal counsel must fulfill in order to provide adequate representation in termination matters. See In re Adoption of T.M.L.M., 184 A.3d 585, 587-91 (Pa. Super. 2018).

In T.M.L.M., an attorney served dual roles as guardian ad litem and legal counsel for the child, who was under six years old at the time. Id. at 587-90. However, the attorney did not attempt to interview the child, set forth the child's preferred outcome, or advocate for the child's legal interests during the hearings. Id. at 588-90. Instead, the attorney focused solely on the child's best interests. Id.

The T.M.L.M. Court concluded that the child had been deprived of his statutory right to counsel, noting that

effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position.  It may be that Child's preferred outcome in this case is synonymous with his best interests.  It may be that Child wants no contact with Mother.  Child may be unable to articulate a clear position or have mixed feelings about the matter.  Furthermore, termination of Mother's rights may still be appropriate even if Child prefers a different outcome.  However, . . . it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests.

Id. at 590 (citation omitted).  Accordingly, we vacated the order terminating the mother's parental rights and remanded for appointment of legal counsel. Id. at 591; see also In re Adoption of M.D.Q., 192 A.3d 1201 (Pa. Super. 2018) (vacating and remanding where the record did not indicate that counsel attempted to ascertain the children's preferences and the record did not reflect the children's legal interests); see also In re Adoption of D.M.C.,192 A.3d 1207 (Pa. Super. 2018) (vacating and remanding where the record was unclear in what capacity attorney had been appointed to represent children and whether attorney had ascertained the children's legal interests prior to hearing).

More recently, the Pennsylvania Supreme Court, in In re T.S., 192 A.3d 1080 (Pa. 2018), reaffirmed several aspects of L.B.M., noting:

Although multiple opinions were filed in L.B.M., a majority of the Court agreed on several points: (a) in the context of contested termination-of-parental-rights ("TPR") proceedings, the first sentence of Section 2313(a) requires that the common pleas court appoint an attorney to represent the child's legal interests, i.e.,

the child's preferred outcome; (b) where there is a conflict between the child's legal interests and his best interests, an attorney-guardian ad litem (an "attorney-GAL"), who advocates for the child's best interests, cannot simultaneously represent the child's legal interests; and (c) in such a circumstance, the failure to appoint a separate attorney to represent the child's legal interests constitutes structural error, meaning it is not subject to a harmless-error analysis.

In re T.S., 192 A.3d at 1082 (footnotes omitted).

In T.S., Court considered whether separate legal counsel was required to represent the children, who were two and three years old at the time of the termination heading. See id. at 1083-84. The T.S. Court held:

a child's statutory right to appointed counsel under Section 2313(a) of the Adoption Act is not subject to waiver. We additionally reaffirm certain principles agreed upon by a majority of Justices in L.B.M., namely, that during contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian ad litem representing the child's best interests can also represent the child's legal interests. As illustrated by the present dispute, moreover, if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act that counsel be appointed "to represent the child," 23 Pa.C.S. § 2313(a), is satisfied where the court has appointed an attorney-guardian ad litem who represents the child's best interests during such proceedings.

Id. at 1092-93.

Here, at the time of the hearing, L.J.H. was eight years old, A.L.H. was five years old, and H.A.H. was four years old, and there was no indication in the record that they would be unable to express their preferred outcomes. Although each child has some developmental delays, the record indicates that

they are articulate and communicative. Children's appointed legal counsel, however, did not indicate that they attempted to interview any child or discern their preferences.

Moreover, at the close of the hearing, Children's counsel argued that termination of Father's parental rights was in Children's best interests. N.T. at 212-13, 216-17. Neither counsel indicated that they consulted with and ascertained Children's preferences, or otherwise referenced Children's wishes during their closing statements. Id. For example, in response to the court's questioning about whether Father would be allowed visitation with the Children, Attorney Gold indicated that it was up to L.J.H.'s potential adoptive parents, and Attorney Sherry indicated that, without the guardian ad litem present, she was reluctant to take a position on behalf of the girls. Id. at 247.

Before this Court, both counsel have filed briefs on Children's behalf. However, the briefs address the best interests of Children only, and do not express any preference or interests of Children, or indicate that either counsel spoke with or interviewed Children. See T.M.L.M., 184 A.3d at 590 ("Counsel's duty to represent a child does not stop at the conclusion of the termination of parental rights hearing."); see aso Brief for Appellees A.L.H. and H.A.H. at 13-31; see also Brief for Appellee L.J.H. at 15-23. Counsel have not advocated for Children's legal interests on appeal.

Accordingly, we are constrained to vacate the orders terminating Father's parental rights. See T.M.L.M., 184 A.3d at 590-91. On remand,

Children's counsel must interview Children, attempt to discern their preferred outcomes, and communicate this information to the court.[5]   In the event counsel are unavailable to Children, new counsel shall be appointed by the trial court.   In the event counsel determines that Children prefer different outcomes, the court must appoint separate counsel for each child.

If Children's preferred outcomes are consistent with the result of the prior proceedings, the court may supplement the record with a statement of Children's legal interests and re-enter its termination orders.   If Children's preferred outcomes are inconsistent with the previous results, a new hearing shall be conducted.   See T.M.L.M., 184 A.3d at 591 (ordering the trial court to conduct a new hearing only if it serves the "substantive purpose" of providing the child with the opportunity to advance his legal interests through new counsel).

_____

[5] The record does contain some indication as to what the preferences of Children may be.   For example, L.J.H. did not show emotion when saying he missed his father, and does not engage in self-hating behavior as often as when he was first placed in care.   N.T. at 41-42, 66.   L.J.H. stated that, if he was not going to be returned to his parents, he would want to stay with his foster parents.   Id. at 70.   H.A.H. refers to her foster parents as Mommy and Daddy, and, although she refers to Father as "Daddy," she does not want to talk about him.   Id. at 45.   She refers to Mother by her first name, and does not want to visit with her any longer.   Id. at 45-47.   H.A.H. uses her foster parents' last name at school.   Id. at 61.   She has stopped self-injurious behaviors like pulling out her hair.   Id. at 56.   A.L.H. does not want to talk about Father and has also asked to use the last name of her foster parents at school.   Id. at 52, 60.   Nevertheless, T.M.L.M. makes clear that it was counsels' duties to ascertain, express, and, if necessary, advocate for Children's legal interests.   See T.M.L.M., 184 A.3d at 590.

Orders vacated.  Case remanded for further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judge Stabile joins the memorandum.

Judge Dubow files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/28/2018