J-S69041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.D., A.D., AND A.B., MINORS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.D., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1183 MDA 2018 |

Appeal from the Decree Entered June 11, 2018
In the Court of Common Pleas of Lycoming County Orphans' Court at
No(s): 6597

BEFORE: BENDER, P.J.E., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:          **FILED NOVEMBER 30, 2018**

D.D. (Father) appeals from the decree involuntarily terminating his parental rights to his minor children, Aa.D. (born June 2012), Al.D. (born March 2016), and Ah.B. (born March 2017) (Children) pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b) of the Adoption Act.[1, 2] Additionally, Father's counsel, Julian Allatt, Esquire, seeks to withdraw his representation of Father pursuant to ***Anders v. California***, 87 S. Ct. 1936 (1967), ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), and ***In re V.E.***, 611

---

[1] A.B. (Mother) voluntarily relinquished her parental rights on July 5, 2018; she has not appealed separately and is not a party to the instant appeal.

[2] It appears that the termination petition was filed as to all three children on a single docket, and a single decree was entered terminating Father's rights to Children. Accordingly, it was not improper for Father to file a single notice of appeal from the decree. ***Cf. Commonwealth v. Walker***, 185 A.3d 969, 971 (Pa. 2018) (where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case).

A.2d 1267, 1275 (Pa. Super. 1992) (extending **Anders** briefing criteria to appeals by indigent parents represented by court-appointed counsel in involuntary termination matters). After careful review, we vacate the decree as to Aa.D. and remand for further proceedings consistent with this opinion; we deny counsel's petition to withdraw without prejudice; and affirm the decrees regarding Al.D. and Ah.B.

The orphans' court opinion accurately recounts the factual background of this case, and is supported by the record. **See** Orphans' Court Opinion, 6/11/18, at 1-10. On March 7, 2017, Lycoming County Children & Youth Services (CYS or the Agency) filed an application for emergency protective custody following Mother's incarceration. At that time, Father, who had a criminal past dating back to 2010, was also incarcerated.[3] Following a hearing on March 8, 2017, Aa.D. and Al.D. were placed in the physical custody of their maternal grandmother.

CYS filed a dependency petition on March 9, 2017. Prior to the dependency hearing, Mother gave birth to Ah.B., who was immediately placed in emergency protective custody. Maternal Grandmother was unable to care for Ah.B. in addition to the other children, and Ah.B. was placed in a foster

---

[3] Father was incarcerated for a parole violation following a charge of unauthorized use of a motor vehicle, 18 Pa.C.S.A. § 3928, in August 2016. He previously served a three-to-six-year sentence for possession with intent to deliver, 35 P.S. § 780-113(a)(30), from 2012 to 2015. Additionally, Father was arrested in 2010 for driving under the influence, 75 Pa.C.S.A. § 3802, and fleeing and eluding, 75 Pa.C.S.A. § 3733, and served one to six months of incarceration in county jail.

home. On March 31, 2017, the court held a dependency hearing for Aa.D. and Al.D., and a shelter care hearing for Ah.B. The two older children were adjudicated dependent and remained in the custody of Maternal Grandmother; Ah.B. remained in foster care. On April 3, 2017, CYS filed a dependency petition as to Ah.B. He was adjudicated dependent on April 6, 2017. On April 12, 2017, Maternal Grandmother voluntarily placed Aa.D. and Al.D. in foster care. On April 17, 2017, all three Children were placed in the same foster home.

Permanency review hearings were held in May 2017, July 2017, October 2017, January 2018, and April 2018. In May, Father had not maintained contact with CYS or Children. In July, Father had made contact with the Agency and Children. After caseworker Crystal Minnier provided Father with stamped envelopes, Father sent a letter to Aa.D. However, despite being advised to stay in regular contact with Children, Father did not do so. Additionally, during the July hearing, when Aa.D. saw Father on the video conference screen, Aa.D stated, "You're the one who beat my mom." At that time, Aa.D. was experiencing behavioral issues and potentially had attention-deficit/hyperactivity disorder (ADHD). In August 2017, Father wrote to Ms. Minnier and claimed Children had never been present to witness domestic violence between him and Mother, but admitted Aa.D. must have "seen something."

In November 2017, Father missed scheduled phone calls with Aa.D. Additionally, Father was denied parole on November 28, 2017. By January

2018, Father was maintaining regular phone contact with Children. In April 2018, although Father was maintaining contact with Children and had spoken to Aa.D. ten times, he had not completed any parenting classes and had sent only one letter.

On April 13, 2018, CYS filed a petition seeking to change the permanency goals of Children to adoption and to involuntarily terminate Father's parental rights. Following the filing of the petition, Father called CYS to ask what he had to do to have Children returned to his care upon release from prison. He was informed that he would need to complete parenting classes and be evaluated for domestic violence. Father was also informed that CYS would consider increasing his visits and returning the Children only after he had been successful in those areas for eight months. In May 2018, Father sent Children two letters and a box of toys.

On June 4 and June 5, 2018, the court conducted a termination hearing. Children were represented by Angela Lovecchio, Esquire. CYS presented testimony from the following individuals: Karen Schooley (visitation caseworker); Crystal Minnier (caseworker); Bruce Anderson (psychologist); Shirley Larson (licensed clinical social worker and play therapist); J.U. (foster mother); and Teresa Ross (caseworker). Mr. Anderson testified that Aa.D. and Father share a bond, and that Father loves Al.D. and Ah.B. *See* N.T., 6/4/18, at 63-64. However, he also testified that Children are more strongly bonded to their foster parents. *Id.* at 64. Mr. Anderson opined that due to the lack of time Children have spent with Father, the bond has weakened, and

Children would not be traumatized by the termination of their bond with Father. *Id.* at 64.

Father, represented by counsel, testified on his own behalf. Father admitted he was mostly absent from the lives of Aa.D. and Al.D., and that he had never met Ah.B. *See* N.T., 6/5/18, at 74-82. He stated that he planned to complete his current program and attend a domestic violence class by June 2018, appear before the parole board in July 2018, and be released from prison by August 2018. *Id.* at 104-107. Additionally, L.H., Father's sister, testified regarding her relationship with Father and Children. *See* N.T., 6/4/18, at 167. L.H. claimed she could be a resource if Children were placed with Father. *Id.* She also stated that she had observed Father interact positively with Aa.D. and that Father had expressed concern for Children. *Id.* at 170. She described the relationship between Father and Mother as "toxic." *Id.* at 186.

At the conclusion of the hearing, the court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), and (b). Father timely filed a notice of appeal and concise statement of errors on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In this Court, counsel has filed an *Anders* brief.

On appeal, Father raises the following issues for our review:

I. Whether the undersigned counsel's application to withdraw as counsel should be granted where counsel has investigated the possible grounds for appeal and finds the only issue raised on appeal to be frivolous?

II. Whether the evidence produced at trial was sufficient to form a basis for the termination of [Father's] parental rights to his three children?

*Anders* Brief at 7 (unnecessary capitalization omitted).

When faced with a purported *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel on direct appeal under *Anders*, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in *Santiago*, namely:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Counsel also must provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879-880 (Pa. Super. 2014).

After determining that counsel has satisfied the technical requirements of

*Anders* and *Santiago*, this Court may "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

Attorney Allatt's *Anders* brief complies with the above requirements. He includes a summary of the relevant factual and procedural history; he refers to the portions of the record that could arguably support Father's claim; and he sets forth his conclusion that the appeal is frivolous and no other issues could be raised. He explains his reasoning and supports his rationale with citations to the record and pertinent legal authority. Additionally, Attorney Allatt has supplied Father with a copy of the *Anders* brief and a letter explaining the rights enumerated in *Nischan*, *supra*. Thus, counsel has complied with the technical requirements for withdrawal, and we therefore proceed to independently review the record to determine if the issues raised are frivolous, and to ascertain whether there are non-frivolous issues Father may pursue on appeal.

We review cases involving the termination of parental rights mindful of the following:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial

- 7 -

court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

Upon review of the record and prior to addressing the merits of Father's appeal, we first address *sua sponte* the representation provided by Children's legal counsel. *See In re K.J.H.*, 180 A.3d 411, 412-414 (Pa. Super. 2018). Our Supreme Court, in *In re Adoption of L.B.M.*, 161 A.3d 172, 183 (Pa. 2017) (plurality), held that 23 Pa.C.S.A. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in contested involuntary termination proceedings. The Court noted that legal interests are synonymous with the child's preferred outcome, but the child's best interests are determined by the court. *Id.* Since *L.B.M.*, this Court has clarified the requirements counsel must meet in order to provide adequate representation in termination matters. *See In re Adoption of T.M.L.M.*, 184 A.3d 585, 587-91 (Pa. Super. 2018). The Pennsylvania Supreme Court has held: (1) a GAL may serve as counsel where there is no conflict between the child's legal and best interests, and (2) there is no conflict between the child's best and legal interests if the child is non-communicative due to the child's young age. *See In re T.S.*, 192 A.3d 1080, 1092-93 (Pa. 2018).

As noted above, the trial court appointed Attorney Angela Lovecchio, Esquire, as legal counsel for Children. *See*, *e.g.*, *K.M.*, 53 A.3d at 781; *T.S.*, at 1092-93. Attorney Lovecchio was present at the hearings and participated

- 8 -

in cross-examination of CYS's witnesses and Father. However, she did not argue Children's preferred outcome. The record is silent as to whether Attorney Lovecchio ascertained the preferred outcome of Aa.D., who was nearly six years old at the time of the hearing. *See*, *e.g.*, *T.S.*, at 1092-93. Additionally, at the conclusion of the hearing, Attorney Lovecchio argued that termination was in Children's best interests – not in their legal interests. She also failed to file a brief with this Court or join the brief of another party. *See T.M.L.M.*, 184 A.3d at 590 (recognizing that counsel's duty to represent a child does not stop at the conclusion of the termination of parental rights hearing, and counsel abdicates legal responsibilities to his client when he fails to file a brief or otherwise notify this Court of his client's position). Furthermore, while Al.D. and Ah.B. were too young to convey their preferences – such that there could be no conflict between their best and legal interests – the record is not clear as to the preference of Aa.D., who was nearly six years old at the time of the hearing. *T.S.*, 192 A.3d at 1092-93. Thus, we conclude that Attorney Lovecchio's representation as to the two younger children was appropriate; we cannot make the same determination regarding Aa.D. *Id.*

Consistent with the foregoing, we are constrained to vacate the decree as to Aa.D. and remand for further proceedings. *See T.M.L.M.*, 184 A.3d at 587-91 (vacating and remanding for further proceedings where the attorney admitted she did not interview the six-year-old child to ascertain the child's preferences); *see also In re Adoption of M.D.Q.*, 192 A.3d 1201 (Pa. Super.

2018) (vacating and remanding where the record does not indicate that counsel attempted to ascertain the children's preferences and the record does not reflect the children's legal interests); *see also In re Adoption of D.M.C.*, 192 A.3d 1207 (Pa. Super. 2018) (vacating and remanding where the record was unclear in what capacity attorney had been appointed to represent children and whether attorney had ascertained children's legal interests prior to hearing). Also, because further proceedings are warranted, Attorney Allatt's motion to withdraw is denied without prejudice.

We next turn to the merits of Father's appeal as to the younger children, Al.D. and Ah.B. The court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b). Termination requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). To affirm, we need only agree with any one of the subsections of 2511(a), as well as subsection (b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we focus our analysis on subsection (a)(2) and (b).

- 10 -

The relevant sections of 23 Pa.C.S.A. § 2511 provide that:

**(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *See In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998). The grounds for termination are not limited to affirmative misconduct, but involve

parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.*

In *In re Adoption of S.P.*, our Supreme Court discussed *In re Adoption of McCray*, 460 Pa. 210, 331 A.2d 652 (1975), and stated:

> Applying in *McCray* the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." *Id.* at 655. We observed that the father's incarceration made his performance of this duty "more difficult." *Id.*

*S.P.*, 47 A.3d at 828. The Supreme Court continued:

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.
>
> [*McCray*] at 655 (footnotes and internal quotation marks omitted). . . .

*In re Adoption of S.P., supra.*

Instantly, Father argues that he loves his children and has attempted to keep in contact with them while incarcerated. *See Anders* Brief at 18-20. However, the record has established that Father's parental rights were properly terminated under Section 2511(a)(2).

- 12 -

CYS presented evidence that Father was incarcerated for almost all of Al.D. and Ah.B.'s lives. He has never met Ah.B. Although Father kept in phone contact with Aa.D., he did not speak to the two younger children on the phone. While he placed Children and caseworkers on his visitor list, he did not actively pursue visits with Children. Additionally, Father made no other efforts to parent. For example, Father was provided with stamped envelopes on a monthly basis and encouraged to write to Children. He sent only one letter in the first year of Children's placement. While Father claims that he loves the Children, this Court has held that love alone is not a reason to hold a child's life in abeyance. *See In re R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006). Here, the trial court noted that although Father "stated repeatedly that he loves [Children], and although those involved in this case agreed that he does, the [c]ourt finds that he has done nothing to show that love." *See* TCO at 13.

Additionally, the court referenced the uncertainty of Father's future. With an uncertain parole date and the requirement that Father achieve stability, it was unlikely that Father's parenting incapacity could be remedied in a reasonable amount of time. *Id.* at 15. Children have been in placement for two years, and Father would need to establish a residence, find and maintain employment, visit regularly with Children, meet all parole requirements, complete domestic violence, drug, and alcohol evaluations, and enroll in any recommended counseling and parenting classes. *Id.*

Accordingly, we discern no error in the trial court's finding that competent, clear, and convincing evidence supported the termination of Father's parental rights to Al.D. and Ah.B. pursuant to Section 2511(a)(2), based upon Father's continued incapacity – his incarceration, lack of attempts to be an active parental figure in Children's lives, and the unlikelihood that he could achieve stability in a reasonable amount of time after being paroled – that resulted in Children behind without essential parental care, the cause of which "cannot or will not be remedied." **See Lilley**, 719 A.2d at 330; **Z.P.**, 994 A.2d at 1117.

Next, we must consider whether Children's needs and welfare will be met by termination pursuant to Subsection (b). **See Z.P.**, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." **Id.** The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. **Id.** Ultimately, the concern is the needs and welfare of a child. **Id.**

We have stated:

> [b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider

> whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

***Z.P.***, 994 A.2d at 1121 (quoting ***In re C.S.***, 761 A.2d 1197, 1202 (Pa. Super. 2000)).  The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.  ***See In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011).  Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists.  ***In re: K.Z.S.***, 946 A.2d 753, 763 (Pa. Super. 2008).

The record reflects that a bonding assessment was conducted by Bruce Anderson, a licensed psychologist.  ***See*** TCO at 16.  Mr. Anderson observed that Father has had very limited contact with Al.D., due to the fact that Father has been incarcerated for most of Al.D.'s life; Father has had no contact with Ah.B. because he has been incarcerated for all of Ah.B.'s life.  ***Id.*** at 16-17.  Mr. Anderson concluded that Al.D. and Ah.B. do not have a relationship with Father, and while Father appears to have an emotional bond to Children, the Children are not bonded to Father.  ***Id.***  In contrast, the Children are strongly bonded with their foster family, doing well in the home, and have formed loving relationships with their foster parents and siblings.  ***Id.***

On this record, indicating that there was no bond between Father and Children, clear and convincing evidence supports the trial court's termination of Father's parental rights with respect to 2511(b), where adoption would best serve Children's needs and welfare.  ***See Z.P.***, 994 A.2d at 1126-27; ***K.Z.S.***,

946 A.2d at 763. Accordingly, we affirm the trial court's orders as to Al.D. and Ah.B.

Finally, with regard to remand, we direct the orphans' court to re-appoint legal counsel for Aa.D. Counsel shall attempt to ascertain Aa.D.'s preferred outcome as to Father by directly interviewing Aa.D., following any direction to the extent possible, and advocating in a manner that comports with Aa.D.'s legal interests. Counsel should attempt to discern from Aa.D. whether Aa.D. prefers adoption by foster parents. Once legal counsel has communicated with Aa.D. as to preferred outcome, counsel shall notify the orphans' court if termination of Father's parental rights is consistent with Aa.D.'s legal interests. If Aa.D.'s preferred outcome is consistent with the result of the prior termination proceedings, the orphans' court shall re-enter its June 11, 2018 termination decree as to Father and Aa.D. If the preferred outcome is in conflict with the prior proceeding, the orphans' court shall conduct a new termination/goal change hearing to provide Aa.D.'s legal counsel an opportunity to advocate on behalf of Aa.D.'s legal interests. *See T.M.L.M.*, 184 A.3d at 591 (ordering that orphans' court shall conduct a new hearing only if it serves the "substantive purpose" of providing the child with the opportunity to advance his legal interests through new counsel).

Decrees regarding Al.D. and Ah.B. affirmed. Decree regarding Aa.D. vacated without prejudice to permit the orphans' court to re-enter the original decree if a new termination hearing is not warranted, or to conduct a new hearing if necessary to advance Aa.D.'s legal interests. Counsel's motion to

withdraw denied without prejudice.   Case remanded for proceedings consistent with this memorandum.

Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2018