J-S71001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1925 EDA 2018 |

Appeal from the Decree Entered June 12, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000135-2018
CP-51-DP-0000017-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: R.K.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1930 EDA 2018 |

Appeal from the Decree Entered June 12, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000133-2018
CP-51-DP-0001080-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: H.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1931 EDA 2018 |

Appeal from the Decree Entered June 12, 2018

J-S71001-18

In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000134-2018
                        CP-51-DP-0001079-2016

BEFORE:  PANELLA, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 12, 2018**

R.H. ("Mother") appeals from the June 12, 2018 decrees involuntarily terminating her parental rights to her minor children, daughter H.H. (born February 2014), and sons R.K.P. (born October 2015) and J.M.H. (born January 2017) (collectively "Children").[1] We affirm the decrees as to R.K.P. and J.M.H., but we are constrained to vacate the decree as to H.H., and remand for further proceedings consistent with this memorandum.[2]

We adopt the following recitation of facts from the trial court opinion, which in turn is supported by the record. **See** Trial Court Opinion ("TCO"),

_____

[1] On September 4, 2018, this Court issued a rule to show cause why Mother's appeal should not be quashed pursuant to **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (holding that failure to file separate notices of appeal from an order resolving issues on more than one docket will require the appellate court to quash the appeal). Here, mother filed separate notices of appeal for each Child, but a single appeal from the termination and dependency dockets. In her response to the rule to show cause order, Mother noted that, although she had appealed the orders and decrees on the both dependency and termination dockets, she was only appealing the termination of her parental rights. Thus, she requested that the appeal from the goal change orders be discontinued and the appeal to continue from the termination docket decrees only. On September 6, 2018, this Court referred the issue to the merits panel. Accordingly, we discontinue Mother's appeals from the orders on the dependency docket only.

[2] That same day, the court terminated the parental rights of two fathers: L.E., father of H.H., and W.P., father of R.K.P. and J.M.H. L.E. has not separately appealed the termination. We address W.P.'s appeal in a separate memorandum.

- 2 -

8/16/18, at 1-19. Prior to the initiation of this matter, Mother had been involved with the Philadelphia Department of Human Services ("DHS"). In March 2015, Mother's parental rights to her older children A.M., K.M., J.M., and S.M., were involuntarily terminated. And at least two other children, L.H. and N.H., were also committed to DHS.

On May 10, 2016, DHS received a general protective services report alleging that seven-month-old R.K.P. had been last seen for a well-child visit in March 2016, and, at the time, had been vomiting. Mother was counseled regarding overfeeding R.K.P. and appeared overwhelmed and frustrated caring for R.K.P. and his older sister, two-year-old H.H. Mother was living in a substance abuse shelter with Children, had missed three scheduled visits for R.K.P. at St. Christopher's Hospital for Children, and was not current with R.K.P.'s vaccinations. After the shelter was contacted, Mother left the shelter without leaving valid contact information.

On May 11, 2016, DHS phoned Mother and informed her that DHS and an in-home protective services social worker would visit her home the next day. Mother agreed to the visit; however, upon the arrival of social workers, she was not at home. DHS learned that Mother had been evicted several days earlier. Mother did not respond to repeated calls and text messages, but eventually provided DHS with an updated address. When DHS visited the new address no one answered the door. Another family's name appeared on the nameplate. DHS left a notice letter in the mailbox.

On June 3, 2016, DHS filed a dependency petition as to H.H. and R.K.P., and alleged that aggravated circumstances existed pursuant to 42 Pa.C.S.A. § 6302. On July 13, 2016, Mother was incarcerated for civil contempt. At that time, W.P. brought H.H. and R.K.P. to DHS, and provided DHS with the address where he resided with Mother. On July 14, 2016, DHS filed an application for emergency protective custody and the next day obtained an order for protective custody for R.K.P. and H.H.

On August 9, 2016, R.K.P. and H.H. were adjudicated dependent and removed from Mother's care. Mother was referred to the Clinical Evaluation Unit ("CEU") for a drug screen and dual diagnosis assessment. Mother was allowed weekly supervised visitation, which would increase to twice weekly supervised visitation if she continued to test negative. At an October 2016 permanency hearing, Mother was attending drug and alcohol treatment and mental health treatment and parenting classes through the Achieving Reunification Center ("ARC"), and was in need of housing.

In January 2017, Mother gave birth to J.M.H., who was removed from her care after discharge from the hospital. Following a shelter care hearing, J.M.H. was placed in foster care. On January 6, 2017, Mother tested positive for opiates. A week later, the court held a permanency review hearing for H.H. and R.K.P. At that time, Mother's visitation was adequate; she was attending ARC, was enrolled in a dual diagnosis treatment, and was residing in a domestic violence shelter. She was re-referred to the CEU for a drug screen and dual diagnosis assessment.

On February 6, 2017, J.M.H. was adjudicated dependent. Mother was again referred to CEU for drug and alcohol screens. Although Mother reported that she was attending an intensive outpatient program for drug treatment, CEU was unable to verify her progress.

In April 2017, the court entered an aggravated circumstances order as to Mother. Additionally, Mother was referred for a parenting capacity evaluation and for a forthwith drug screen and assessment with three random screens prior to the next listing. In July 2017, Mother's visitation was decreased to weekly, ninety-minute supervised visits at DHS. Mother was referred for outpatient drug treatment, but had not attended since March 2017. Mother was referred back to CEU for a drug, alcohol, and dual diagnosis assessment.[3]

On February 20, 2018, DHS filed a petition seeking to involuntarily terminate the parental rights of Mother, L.E., and W.P. pursuant to Section 2511(a)(1), (2), (5), (8), and (b), and petitions to change Children's goal to adoption.  DHS filed amended termination and goal change petitions in May 2018. [4]

On June 12, 2018, the court convened hearings on the goal change and termination petitions. Children were represented by Marilyn Rigmaiden-

_____

[3] An additional permanency review hearing was held in November 2017, although the order does not provide additional information regarding Mother's progress.

[4] Mother gave birth to C.H. in April 2018. Father is the biological father of C.H. C.H. is in the legal custody of DHS.

DeLeon, Esquire, guardian *ad litem*, and James Martin, Esquire, legal counsel. Mother, represented by counsel, was present at the hearing and testified on her own behalf. Dr. William Russell, forensic psychologist; Jennifer Kosloski, DHS social worker; and Marita Thorpe, DHS case aide, testified for DHS.

Dr. Russell testified that he performed parenting capacity evaluations of Mother in 2014-2015, and 2017-2018. In the original evaluation, Dr. Russell had a number of concerns including Mother's lack of consistent information; history of unstable housing; pattern of projecting blame onto others; lack of insight into her role in the events leading to Children's placement; uncooperativeness during interviews; and mental health issues. At that time, Dr. Russell recommended that Mother begin individual treatment to address her mental health and substance abuse issues.

During the 2018 evaluation, Mother presented the same behavior and concerns. Although Mother informed Dr. Russell she was attending a drug and alcohol program and psychiatric treatment, Dr. Russell was unable to obtain records to verify these claims. In 2014, Mother's MMPI 2 testing was consistent with a mood disorder. In 2017, after being administered the test, Mother refused to cooperate and did not respond to questions. Additionally, from approximately 2012 through 2018, Mother was unable to achieve consistent housing or employment. Dr. Russell's professional opinion remained that Mother was unable to provide care and safety to Children.

Jennifer Kosloski testified that she has been the assigned DHS case manager for the family since 2014. DHS has been involved with Mother since

2012. Mother has twelve children; her parental rights to four children were previously terminated, and nine children are currently in the custody of DHS.[5] For H.H. and R.K.P., Mother's objectives were to provide DHS with any changes in address or telephone numbers; report to CEU to complete a dual diagnosis assessment; comply with any recommendations; comply with workshops at ARC; and attend all weekly visits. These objectives were the same objectives initially provided for Mother in 2012.

While Mother is consistent with visitation, she has not been able to maintain a consistent stay in a shelter program to assist with housing. Mother provided random, negative drug screens in January 2017, February 2017, and March 2017, but did not provide samples in two June 2017 and two July 2017 screens. Mother walked out of drug and alcohol treatment in March 2017. Mother tested positive for marijuana at the birth of her youngest child, C.H., in April 2018. As of the termination hearing, attending drug and alcohol treatment was still an outstanding objective. Additionally, Mother did not complete any programs at ARC.

Children are placed together in a pre-adoptive home. They have a bonded relationship with their foster mother. Ms. Kosloski's opinion was that Children would not be irreparably harmed by the termination of Mother's parental rights, and that it was in their best interests to be placed for adoption.

---

[5] Mother clarified that she has had eleven children in total and that ten are living.

Marita Thorpe testified that she is the supervisor of Mother's weekly visits with Children. Ms. Thorpe testified that Mother often gets overwhelmed when all Children are present, and that if one child is acting out it is difficult for Mother to concentrate on all the children and redirect the behavior of that child. Ms. Thorpe requested visits be shortened, because Children would get agitated during lengthier visits and would cry throughout the duration. During the visits, Mother is a disciplinarian and yells at Children. Children do not run to Mother to hug her at the beginning of visits. H.H. calls Mother by her first name unless Mother redirects her. Children call their foster mother "mom," and run to see her at the end of each visit with Mother. Additionally, although R.K.P. is stubborn and does not listen to Mother or W.P., he allows foster mother to redirect him.

Mother testified that she was attending mental health treatment at ARC, but when she needed to provide evidence that she was attending treatment, "that gentleman . . . disappeared." TCO, at 107. Mother testified that her relationship with Children could be better if she "had [her] own process." *Id*. at 109. Mother admitted that if she was tested for marijuana at the court hearing, she would test positive; she treats her migraines with marijuana but does not have a medical marijuana card. Mother did not have any documentation of her attendance in mental health treatment, drug and alcohol treatment, or parenting classes. Mother claimed that the week before the termination hearing she gave each of the Children a toy.

At the conclusion of the hearing, the court, without allowing argument by counsel for any party, terminated the parental rights of L.E., W.P., and Mother pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). Mother timely filed notices of appeal and statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother argues the court abused its discretion in terminating her parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). *See* Mother's Brief, at 7.

Upon review of the record and prior to addressing the merits of Mother's appeal, we must first address *sua sponte* the representation provided by Child's legal counsel. *See In re K.J.H.*, 180 A.3d 411, 412-414 (Pa. Super. 2018). Our Supreme Court, in *In re Adoption of L.B.M.*, 161 A.3d 172, 183 (Pa. 2017) (plurality), held that 23 Pa.C.S.A. § 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in contested involuntary termination proceedings. The Court noted that legal interests are synonymous with the child's preferred outcome, but the child's best interests are determined by the court. *See id*.

Since *L.B.M.*, this Court has clarified the requirements counsel must meet in order to provide adequate representation in termination matters. *See In re Adoption of T.M.L.M.*, 184 A.3d 585, 587-591 (Pa. Super. 2018). The Pennsylvania Supreme Court has held that: (1) a GAL may serve as counsel where there is no conflict between the child's legal and best interests, and (2) that there is no conflict between the child's best and legal interests if the child

is non-communicative due to the child's young age. *See In re T.S.*, 192 A.3d 1080, 1092-1093 (Pa. 2018).

Here, the trial court appointed legal counsel for Children, Attorney James Martin, Esquire. Attorney Martin was present at the hearing and participated in cross-examination of witnesses. He did not, however, argue H.H.'s preferred outcome. The record is silent as to whether Attorney Martin ascertained the preferred outcome of H.H., who was four years and three months old at the time of the hearing and where there was no indication H.H. was nonverbal. *See In re T.S.*, at 1092-1093. Additionally, Attorney Martin has failed to file a brief before this Court or join the letter brief of another party. *See In re adoption of T.M.L.M.*, 184 A.3d at 590 (recognizing that counsel's duty to represent a child does not stop at the conclusion of the termination of parental rights hearing, and counsel abdicates legal responsibilities to his client when he fails to file a brief or otherwise notify this Court of his client's position). Finally, the record is not clear as to H.H.'s preferences, although there is some indication that all Children are happy and thriving in their pre-adoptive home, and do not share a strong bond with Mother. But as R.K.P. and J.M.H., three and two years old, respectively, were too young to convey their preferences, there could be no conflict between their best and legal interests. *See In re T.S.*, 192 A.3d at 1092-1093.

Accordingly, we are constrained to vacate the decree in this matter as to H.H., and remand for further proceedings. *See In re adoption of T.M.L.M.*, 184 A.3d at 587-591 (vacating and remanding for further

proceedings where the attorney admitted she did not interview the six-year-old child to ascertain the child's preferences); *In re Adoption of M.D.Q.*, 192 A.3d 1201 (Pa. Super. 2018) (vacating and remanding where the record does not indicate that counsel attempted to ascertain the children's preferences and the record does not reflect the children's legal interests); *In re Adoption of D.M.C.*, 192 A.3d 1207 (Pa. Super. 2018) (vacating and remanding where the record was unclear in what capacity attorney had been appointed to represent children, including four and a half-year-old child, and whether attorney had ascertained children's legal interests prior to hearing).

We now turn now to the merits of Mother's appeal as to R.K.P. and J.M.H.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

> [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often

- 11 -

presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (internal citations omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act. The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation omitted).

We may affirm the court's decision regarding the termination of parental rights with regard to any *one* subsection of § 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, the court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). We will analyze the court's decision to terminate under § 2511(a)(2) and (b). Subsection (a)(2) provides as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

23 Pa.C.S.A. § 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002)).

A parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See In re A.L.D.*, 797 A.2d at 337. And a parent's vow to cooperate, after a long period of

uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. ***See id***., at 340.

Mother claims the court erred in terminating her parental rights under subsection (a)(2) because she complied with her FSP goals, including communication with her social worker, taking random drug screens, and only "once tested positive for marijuana." Mother's Brief at 15-16. She claims she completed parenting and participated in drug and alcohol treatment, and that the domestic violence shelter in which she was living could accommodate Children.

Here, Mother's arguments are without merit. The parenting capacity evaluation completed by Dr. William Russell showed that Mother was uncooperative and had little insight into her role in Children's placement. Additionally, her behavior and presentation had not changed since 2015, when mental health treatment was recommended. Mother had not addressed these issues, and Dr. Russell remained convinced that Mother was not able to safely parent Children. Mother showed little insight into the reasons why her parental rights to several of her other children were involuntarily terminated, and insisted that someone had lied about her. Further, Mother had not resolved her history of unstable housing and lacked a feasible plan to obtain appropriate housing outside of a shelter. Mother did not complete her ARC parenting objectives, and walked out of drug and alcohol treatment in March 2017, and tested positive for marijuana at the birth of her youngest child in April 2018.

Mother admitted to currently using marijuana at the termination hearing. And she had tested positive for opiates.

Accordingly, we conclude that the trial court properly found by competent, clear, and convincing evidence that Mother's parental rights to R.K.P. and J.K.M. could be terminated pursuant to subsection (a)(2), based upon the finding that Mother evinced a continued incapacity—her inability to seek mental health treatment, obtain stable housing, or complete her parenting and drug and alcohol objectives—that resulted in Children behind without essential parental care, the cause of which "cannot or will not be remedied."

We next determine whether termination was proper under § 2511(b).

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability. … [T]he determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (some citations, brackets and quotation marks omitted; brackets added). "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citations omitted).

- 15 -

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.,*** 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted).

Here, evidence was presented to show that Children had a bonded relationship with their foster mother and would not be irreparably harmed by the termination of Mother's parental rights. Further, Children do not run to Mother when they see her.  They do not call her "mom," but do call their foster mother "mom." While Mother testified that her relationship with Children could be better if she had her own process, there was no evidence introduced to show that R.K.P. and J.M.H. were bonded to her.

On this record, indicating that there was no bond between Mother and Children, clear and convincing evidence supports the trial court's termination of Mother's parental rights with respect to subsection (b), where adoption would best serve Children's needs and welfare.  ***See Z.P.***, 994 A.2d at 1126-27; ***K.Z.S.***, 946 A.2d at 763. Accordingly, we affirm the trial court's orders as to R.K.P. and J.M.H.

On remand, we direct the orphans' court to promptly re-appoint legal counsel for H.H. Counsel must attempt to ascertain H.H.'s preferred outcome as to Mother by directly interviewing her, following any direction to the extent possible, and advocating in a manner that comports with H.H.'s legal interests.

Counsel should discern from H.H. whether she prefers adoption by foster mother if foster mother does not support continued contact with Mother. Once H.H.'s preferred outcome is identified, counsel shall immediately notify the orphans' court whether termination of Mother's parental rights is consistent with H.H.'s legal interests.

If H.H's preferred outcome is consistent with the result of the prior termination proceedings, the orphans' court shall re-enter its June 12, 2018 termination decree as to Mother. If the preferred outcome is in conflict with the prior proceeding, the orphans' court shall conduct a new termination/goal change hearing as to Mother only to provide H.H.'s legal counsel an opportunity to advocate on behalf of H.H.'s legal interests. *See In re Adoption of T.M.L.M.*, 184 A.3d at 591 (ordering that orphans' court shall conduct a new hearing only if it serves the "substantive purpose" of providing the child with the opportunity to advance his legal interests through new counsel).

Decrees regarding R.K.P. and J.M.H. affirmed. Decree regarding H.H. vacated without prejudice to permit the orphans' court to re-enter the original decree if a new termination hearing is not required. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Nichols joins the memorandum.

Judge Dubow did not participate.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/12/18</u>