J-S39033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.K.W., MOTHER | : | |
| | : | |
| | : | No. 657 EDA 2019 |

Appeal from the Decree Entered February 15, 2019
in the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000068-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: I.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: C.K.W., MOTHER | : | |
| | : | |
| | : | No. 658 EDA 2019 |

Appeal from the Decree Entered February 15, 2019
in the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-000067-2018

BEFORE:   GANTMAN, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED AUGUST 28, 2019**

Appellant, C.K.W. ("Mother"), files these consolidated appeals from the decrees entered February 15, 2019, in the Philadelphia County Court of Common Pleas, granting the petitions of the Philadelphia Department of Human Services ("DHS") and involuntarily terminating her parental rights to

_____

[*] Former Justice specially assigned to the Superior Court.

her minor, dependent daughters, A.W., born in October 2014, and I.W., born in January 2013 (collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1] After review, we affirm the trial court's decrees.

The trial court summarized the relevant procedural and factual history as follows:

> The relevant facts and procedural history of this case are as follows: The Children have been in care continuously for 31 months. In June 2016, the [C]hildren were adjudicated dependent and committed to [DHS] because of Mother's and [F]ather's drug and alcohol use, neglect, and lack of stable housing. Based on those concerns, Bernice Royal, the Community Umbrella Agency ("CUA") case manager, testified that her agency established case plan objectives that remained constant throughout the life of the case. Those objectives were communicated to both parents and referrals were made for all services necessary to complete said objectives.
>
> On January 24, 2018, DHS filed petitions to involuntary terminate Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8)[,] and (b)[,] and to change the Children's permanency goal to adoption. This [c]ourt conducted combined termination and goal change hearings (collectively the "TPR" hearings) on November 19, 2018 and February 15, 2019.[2] At the November TPR hearing, Ms. Royal

---

[1] By separate decrees entered the same date, the trial court involuntarily terminated the parental rights of father, J.C. ("Father"), and unknown father as to A.W., and unknown father as to I.W. No father or unknown father has filed an appeal or is a party to the instant appeals.

[2] The Children were represented by a guardian *ad litem*, Michael Graves, Esquire, and legal counsel, referred to as a child advocate, John Capaldi, Esquire. Notably, the court additionally convened on February 7, 2019, at which time Attorney Capaldi placed the Children's preferences on the record.

testified that Mother's single case plan objectives throughout the life of the case were as follows: (1) comply and make herself available to all case management services and recommendations; (2) comply with drug and alcohol treatment; (3) attend Achieving Reunification Center ("ARC") for housing and parenting; (4) maintain mental health treatment; and (5) comply with [c]ourt[-]ordered random drug screens. In regards to Mother's compliance with her objectives, Ms. Royal testified that Mother was non-compliant and as of January 24, 2018, she hadn't completed any of her objectives.

Ms. Royal further testified that drug and alcohol was an important objective and that unsupervised contact with the Children could not begin unless and until Mother successfully completed drug and alcohol treatment. Mother was also offered

_____

He was then excused from the February 15, 2019 hearing. Notes of Testimony ("N.T."), 2/15/19, at 5-6. The notes of testimony for the February 7, 2019 hearing were not included with the certified record. However, as indicated *infra* at n. 3, Ms. Royal additionally reported as to the Children's preferences and there is no indication of any divergence from that which was ascertained by Attorney Capaldi. *See In re Adoption of L.B.M.*, 161 A.3d 172, 174-75, 180 (Pa. 2017) (plurality) (stating that, pursuant to 23 Pa.C.S.A. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests, defined as a child's preferred outcome); *see also In re T.S.*, 192 A.3d 1080, 1089-90, 1092-93 (Pa. 2018) (finding the preferred outcome of a child who is too young or non-communicative unascertainable in holding a child's statutory right to counsel not waivable and reaffirming the ability of an attorney-guardian *ad litem* ("GAL") to serve a dual role and represent a child's non-conflicting best interests and legal interests); *cf. In re Adoption of T.M.L.M.*, 184 A.3d 585, 587-91 (Pa. Super. 2018) (vacating and remanding for further proceedings where the attorney admitted she did not interview the six-year-old child to ascertain the child's preferences); *In re Adoption of M.D.Q.*, 192 A.3d 1201 (Pa. Super. 2018) (vacating and remanding where the record does not indicate that counsel attempted to ascertain the children's preferences and the record does not reflect the children's legal interests); *In re Adoption of D.M.C.*, 192 A.3d 1207 (Pa. Super. 2018) (vacating and remanding where the record was unclear in what capacity the attorney had been appointed to represent the children and whether the attorney had ascertained the children's legal interests prior to the hearing).

supervised visits with the Children, but[,] from November 2016 through January 2018[,] Mother hadn't been consistently visiting. Ms. Royal further testified that[,] from February 2018 to July 2018, Mother hadn't visited with the Children at all. With respect to A.W., Ms. Royal indicated that paternal aunts are the ones that meet[] all of her general and medical needs, that there has been no signs of harm from Mother's lack of visitations[,] and that there is no reason to believe that it would cause A.W. irreparable harm changing the goal to adoption and terminating Mother's parental rights. With respect to I.W., Ms. Royal indicated that foster parent meets all of her general and medical needs, and that it is in her best interest to change the goal to adoption.[3]

Based on the foregoing testimony, this [c]ourt issued a decree involuntarily terminating the parental rights of Mother under 23 Pa.C.S.A. §§ 2511(a) (1), (2), (5), and (8)[,] and finding, in accordance with 23 Pa.C.S.A. § 2511(b), that such

---

[3] Ms. Royal further testified that the Children wished to remain in their current pre-adoptive homes. N.T., 11/19/18, at 21-22. On re-direct examination, Ms. Royal stated:

**Q**. When you talked to [A.W.], did you -- she's four years old; right?

**A**. Yes. [I.W.] or [A.W.]?

**Q**. [I.W.]?

**A**. Is five.

**Q**. Is five. Okay. Where does she want to stay?

**A**. She states she wants to stay with [her foster mother].

**Q**. And the other child wants to stay where she is?

**A**. With her paternal aunts, yes.

*Id.* at 22.

termination best serves the developmental, physical, and emotional needs and welfare of the Children.[4] . . .

Trial Court Opinion ("T.C.O."), 4/18/19, at 1-3.

On February 15, 2019, Mother filed notices of appeal *pro se*. These notices of appeal did not include concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[5] As Mother was still represented by appointed counsel, on April 2, 2019, this Court ordered counsel file and serve a Rule 1925(b) statement no later than April 12, 2019. **See**

**Commonwealth v. Jette**, 23 A.3d 1032 (Pa. 2011) (emphasizing that hybrid representation is forbidden on appeal). While counsel complied, counsel failed to serve the trial court and trial judge. By subsequent order entered April 16, 2019, counsel was therefore ordered serve the trial court and trial judge by April 17, 2019. Further, these appeals were consolidated by this Court *sua sponte* on April 17, 2019. **See** Pa.R.A.P. 513.

On appeal, Mother raises the following issues for our review:

_____

[4] Separate decrees were entered by the trial court, memorializing its decision placed on the record, on February 15, 2019.

[5] We observe that Mother filed separate notices of appeal as required. **See** Pa.R.A.P. 341, Note ("Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."); **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (holding that the failure to file separate notices of appeal from an order resolving issues on more than one docket "requires the appellate court to quash the appeal"); **see also In the Matter of: M.P.**, 204 A.3d 976, 980-81 (Pa.Super. 2019) (declining to quash due to the appellant's noncompliance with Rule 341 but announcing that this Court would quash any noncompliant appeals filed after February 22, 2019).

A. Whether the trial court committed reversible error when it involuntarily terminated [M]other's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act[,] 23 Pa. C.S.A. §[]2511 (a)(1), [(2), (5), and (8)]?

B. Whether the trial court committed reversible error when it involuntarily terminated [M]other's parental rights without giving primary consideration to the effect that the termination would have on the developmental physical and emotional needs of the child as required by the Adoption Act[,] 23 Pa. C.S.A. §[]2511(b)?

Mother's Brief at 3-4 (suggested answers omitted).

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at [325-26, 47 A.3d at] 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)].

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even

if the record could also support the opposite result." ***In re Adoption of T.B.B.,*** 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting ***Matter of Adoption of Charles E.D.M., II***, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998)).

In the case *sub judice*, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well

as Section 2511(b).  *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004)

(*en banc*).   Here, we analyze the court's termination decrees pursuant to

subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), and (b).

We first address whether the trial court abused its discretion by

terminating Mother's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met:  (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to

- 8 -

be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

In finding grounds for termination of Mother's parental rights pursuant to Section 2511(a)(2), the trial court stated the following:

> Applying [*M.E.P.*] and the elements set forth under 2511(a)(2) to the instant case, it is clear that Petitioners met their burden of demonstrating that termination was proper. The evidence established that "incapacity" and "refusal" under 2511(a)(2) existed given that Mother failed to demonstrate a concrete desire or ability to care for the Children. Mother failed to cooperate with CUA throughout the life of the case, including parenting classes, drug and alcohol treatment, mental health treatment, and visitation. The testimony demonstrated that, because of Mother's past addiction issues, drug and alcohol treatment would be essential for Mother before any unsurprised [sic] contact could begin. The testimony further demonstrated that completing parenting classes would be essential prior to

reunification with the Children. Mother also failed to establish any stability in her life with regard to housing. Moreover, the evidence established that "neglect" existed given that Mother had not visited the Children in about five months. This [c]ourt found that Mother's failure to comply with CUA and consistently visit the Children has left [them] without essential parental care, and the cause of such neglect, refusal and continued incapacity will not be remedied by Mother. Based on the foregoing, this [c]ourt found that competent evidence existed to justify the termination of [Mo]ther's parental rights pursuant to Section 2511(a)(2).

T.C.O., 4/18/19, at 7-8 (citations to record omitted).

Mother, however, argues that the evidence establishes her attempts to comply with her objectives and her commitment to her children. Mother's Brief at 6-7. Mother asserts, "In the instant matter, evidence demonstrates [M]other's attempt at trying to comply with objectives in order to reunify with her children, although her children were not in her care." *Id.* at 6. She continues, "Mother attended drug and alcohol treatment. She also completed a twelve-week parenting class. Mother was also consistent with her visits with the [C]hildren. Mother also was employed." *Id.* (citation to record omitted). Mother further states, "Mother has demonstrated her commitment to remain close to her children because [s]he had a good relationship with her children and [sic] bonded to them. Furthermore, DHS has not proved [she] could not remedy such conditions." *Id.* at 7 (citation to record omitted).

A review of the record supports the trial court's finding of grounds for termination under Section 2511(a)(2). The record reveals that Mother failed to comply with her single case plan objectives aimed at reunification with the

Children.  As we discern no abuse of discretion or error of law, we do not disturb the court's findings.

CUA case manager, Bernice Royal, testified that the Children were removed due to drug use, neglect, and lack of stable housing.  N.T., 11/19/18, at 5.  She recounted Mother's single case plan objectives as:

> Mother to comply and make herself available to all case management services and recommendations, which include and comply with drug and alcohol treatment, attend ARC for housing and parenting, maintain mental health treatment, comply with [c]ourt[-]ordered random drug screens, and mak[e] herself available to case management services.

> Mother to comply with [c]ourt[-]ordered visitation, and [M]other to search and obtain stable housing.

*Id.* at 7.  Ms. Royal confirmed that she and Mother discussed these objectives and that Mother had not completed any of them by January 24, 2018, the date the termination petition was filed.[6]  *Id.* at 7-10, 22.  Ms. Royal further indicated that Mother acknowledged, when they met in July 2018, that she had failed to complete these objectives by January 2018, and had not completed any by July 2018 either.  *Id.* at 24.

Specifically, Ms. Royal recognized the importance of drug and alcohol treatment and mental health treatment given Mother's history of substance

---

[6] Despite indicating that she "really [does not] remember and [does not] read all that well[,]" Mother acknowledged receipt of documentation of these objectives from the prior CUA case manager, Mary West.  N.T., 2/15/19, at 7. Mother then recognized drug and alcohol treatment, parenting, and housing as objectives.  *Id.* at 7-11.

abuse and mental illness.[7]  *Id.* at 8-9.  Ms. Royal indicated that Mother's substances of choice were crack cocaine, marijuana, and alcohol.  *Id.* at 7.  Further, Mother was diagnosed with depression and bipolar disorder.  *Id.* at 8.  Ms. Royal testified that Mother had not successfully completed either treatment or provided verification of such completion by the time the termination petition was filed in January 2018.[8]  *Id.* at 8-9.

Additionally, Ms. Royal noted that Mother, despite referral to the ARC for housing and parenting programs and classes, Mother had not successfully completed either.[9]  *Id.* at 9.

Lastly, as to visitation, Ms. Royal stated that Mother was not consistent with visitation from November 2016 through January 24, 2018.  *Id.* at 10.

---

[7] Ms. Royal testified that Mother could not be successfully reunified with the Children, or even acquire unsupervised visitation, absent successful completion of drug and alcohol treatment.  N.T., 11/19/18, at 8.

[8] Moreover, Ms. Royal confirmed drug and alcohol treatment, mental health treatment, housing, and parenting were all additionally ordered to be completed by the court.  *Id.* at 11.

[9] We observe that Mother testified that she provided verification of completion of treatment programs, as well as parenting classes to the prior CUA case manager.  N.T., 2/15/19, at 8-10.  She further testified to the completion of a subsequent drug and alcohol treatment program and attempted to submit documentation relating to the completion of this program commenced subsequent to the filing of the termination petition.  *Id.* at 17-20.  In addition, while indicating that she filled out a housing packet and attended a housing program at ARC, Mother conceded that she did not complete this program.  *Id.* at 10.

- 12 -

She further indicated that Mother failed to visit the Children at all from February 2018 until the beginning of July 2018.[10] *Id.* at 10-11.

As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006). Hence, the record substantiates the conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused the Children to be without essential parental control or subsistence necessary for their physical and mental well-being. *See In re Adoption of M.E.P.*, 825 A.2d at 1272. Moreover, Mother cannot or will not remedy this situation. *See id.* As noted above, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a) before assessing the determination under Section 2511(b), and we, therefore, need not address any further subsections of Section 2511(a). *In re B.L.W.*, 843 A.2d at 384.

We next determine whether termination was proper under Section 2511(b). Our Supreme Court has stated as follows:

---

[10] Mother admitted that at a point she got discouraged and stopped attending visitation, for a period of about four weeks, as there were problems with receipt of her confirmation of attendance. *Id.* at 12, 16. She testified, however, in contravention to Ms. Royal, that she had been consistent with visitation for the last eight months. *Id.* at 12-13.

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M. [a/k/a E.W.C. & L.M. a/k/a L.C., Jr.]*, [533 Pa. 115, 123, 620 A.2d 481, 485 (1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 620 Pa. at 628-29, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

Moreover,

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love,

- 14 -

> comfort, security, and stability the child might have
> with the foster parent. . . .

***In re Adoption of C.D.R.***, 111 A.3d at 1219 (quoting ***In re N.A.M.***, 33 A.3d 95, 103 (Pa.Super. 2011)) (quotation marks and citations omitted).

In the case *sub judice*, in determining that termination of Mother's parental rights favors the Children's needs and welfare under Section 2511(b) of the Adoption Act, the trial court stated as follows:

> In the instant matter, this [c]ourt determined that the Children would not suffer irreparable emotional harm if Mother's parental rights were terminated. Mother failed to offer any compelling evidence establishing the existence of a parent-child bond. The testimony demonstrated that the Children's primary bond is with their respective foster parents and that the foster parents assist the Children with their daily needs. Additionally, in determining that termination would best serve the needs and welfare of the Children, this [c]ourt considered that Mother had not been able to meet the Children's emotional, physical, and developmental needs, or provide the Children with a healthy, safe environment for almost two and a half years prior to the TPR hearings. This [c]ourt also took into consideration the wishes of the child. The CUA worker testified that[,] to her understanding, she believes that both Children would like to remain permanently were they are currently. For the foregoing reasons, this [c]ourt properly granted DHS's petition to involuntarily terminate [Mo]ther's parental rights pursuant to Section 2511(b).

T.C.O., 4/18/19, at 9-10 (citations to record omitted).

Upon review, the record supports the trial court's finding that the Children's developmental, physical and emotional needs and welfare favor termination of Mother's parental rights pursuant to Section 2511(b). There was sufficient evidence to allow the trial court to make a determination of the Children's needs and welfare, and as to the existence or lack of existence of a

bond between Mother and the Children such that, if severed, would not have a detrimental impact on them.

Importantly, as indicated, CUA case manager, Bernice Royal, testified that Mother was not consistent with visitation from November 2016 through January 24, 2018. N.T., 11/19/18, at 10. Further, Mother failed to visit the Children at all from February 2018 until the beginning of July 2018. *Id.* at 10-11. Notably, at the conclusion of the visits Ms. Royal supervised,[11] she noted that the Children exhibited no issues separating from or leaving Mother.[12] *Id.* at 24. She likewise noted no signs of harm to the Children as a result of the missed visitation. *Id.* at 11, 14.

Moreover, the Children were both placed in pre-adoptive homes where they are doing well and their needs are being met. *Id.* at 13-16. As to A.W. and her pre-adoptive resource parents, her paternal aunts, Ms. Royal stated, "Loving home, very involved in like just her overall developmental -- they're working now still like interviewing with different Head Start programs to make sure they find that perfect one that will accommodate, you know, what they have and desire for her, for her developmental needs." *Id.* 13-14. As to I.W. and her pre-adoptive resource parent, Ms. Royal described they are "close." *Id.* at 15. She further indicated that I.W.'s pre-adoptive resource parent "is

---

[11] Ms. Royal testified that she supervised four to five visits. N.T., 11/19/18, at 24.

[12] To the contrary, Mother testified that she has a "real close bond" with I.W. and that I.W. would cry every time Mother left a visit. N.T., 2/15/19, at 13.

very experienced [] in making sure her educational needs are met, as well as socialization, medical, dental, vision." *Id.* The Children had been placed in their respective current pre-adoptive homes for the entire time of their placement, thirty-one months at the time the hearing commenced. *Id.* at 13, 15. As a result, Ms. Royal observed that their primary parent-child relationship was with their pre-adoptive resource parents. *Id.* at 16. She expressed that the Children desired to remain in their current homes. *Id.* at 20-21. Ms. Royal further opined that the Children would suffer harm if removed from their current resource homes and that adoption was in their best interests. *Id.* at 14, 16.

While Mother may profess to love the Children, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted).

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/19